# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

**RONALD COLLINS,**

    **Movant,**

v.

                                           **Case No. 5:22-cv-00161**
                                           **Criminal Case No. 5:18-cr-00068**

**UNITED STATES OF AMERICA,**

    **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court are Movant's *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 and Motion to Appear Before the Court. (ECF Nos. 196, 202).[1] This matter is assigned to the Honorable Irene C. Berger, United States District Judge, and has been referred by Standing Order to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned respectfully **RECOMMENDS** that Movant's § 2255 motion be **DENIED**, and this matter be **DISMISSED**, with prejudice, and removed from the docket of the Court. As the undersigned conclusively **FINDS** that Movant is not entitled to the relief requested, an evidentiary hearing is not warranted. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970). Therefore, Movant's Motion to Appear Before the Court is **DENIED**. (ECF No. 202).

---

[1] References to the docket are found in the underlying criminal action, *United States v. Collins,* 5:18-cr-00068-1 (S.D.W. Va. Mar. 13, 2018).

I.  **Factual and Procedural Background**

In August 2013, Movant was arrested on a criminal complaint filed in the Raleigh County, West Virginia Magistrate Court charging him with making terroristic threats against a law enforcement officer. (ECF No. 49-5). At a December 3, 2013 hearing in the criminal matter, the Circuit Court of Raleigh County decided that Movant should undergo a psychiatric evaluation to assess his current competency. (ECF Nos. 49-6, 49-7). On January 15, 2014, Movant was indicted by a Raleigh County grand jury on three counts related to the terroristic threats alleged in the complaint. (ECF No. 49-8).

On February 25, 2014, Dr. Bobby Miller, a board certified psychiatrist, issued a report concerning his evaluation of Movant. (ECF No. 49-9). Dr. Miller assessed Movant with, *inter alia*, bipolar disorder and found that Movant was "currently psychotic with paranoia in the context of irrational grandiosity." *Id.* at 13. He opined that Movant was "not presently capable to participate in his legal process," but added that Movant could "be restored to competency with inpatient psychiatric hospitalization in a reasonable amount of time" and recommended that Movant be admitted to Sharpe Hospital, a state-operated mental health facility. (*Id.*). Based on this evaluation, the Raleigh County prosecutor moved for a judicial finding of incompetency and for Movant's commitment. (ECF No. 49-10).

On March 27, 2014, the Circuit Court of Raleigh County conducted an evidentiary hearing on the prosecution's motion. (*Id.*). After considering testimony from Dr. Miller, West Virginia State Trooper R. A. Marsh, and Movant, the Court issued an order finding Movant "presently … incompetent to stand trial," but also finding a substantial likelihood that Movant could attain competency with appropriate treatment. (ECF No. 49-11). Accordingly, the Court committed Movant to Sharpe Hospital for restorative treatment in

accordance with West Virginia Code §§ 27-6A-1 et seq. (ECF No. 49-11). Over Movant's objections, the Court instructed that Movant was to remain at Sharpe Hospital until he had attained competency, even though the commitment would necessitate a continuance of his case. (*Id.*).

On October 20, 2014, Movant filed a *pro se* petition for a writ of habeas corpus in the Circuit Court of Raleigh County. (ECF No. 197 at 27-36). In the petition, Movant challenged the validity of the commitment order, asserting a number of grounds as to why the order was void. However, Movant remained at Sharpe Hospital for approximately six months at which time he was deemed to be competent to stand trial. (ECF No. 49-12).

At a hearing on November 17, 2014, the Circuit Court of Raleigh County ordered that Movant be transferred to the Veteran's Administration Medical Center and placed on home incarceration with electronic monitoring until alternative home incarceration residency could be approved by the Court. (ECF No. 49-13). The Court noted in its order that Movant had filed a petition for habeas relief, but indicated that Movant had agreed to dismiss the proceeding "as the purpose of the petition [was] accomplished." (*Id.*). Of note, the Circuit Court of Raleigh County made no substantive ruling on the petition prior to its dismissal, and no order was ever entered voiding or otherwise setting aside the commitment order. Ultimately, the state criminal charges against Movant were dismissed. (ECF No. 49-14).

On April 3, 2018, Movant was indicted in this federal court action. (ECF No. 23). According to the indictment, on or about January 6, 2013, Movant provided false information on an ATF Form 4473 in connection with the purchase of a firearm. (*Id.*). In particular, Movant denied having ever been committed to a mental health facility. Five days after completing the form, Movant retrieved and possessed the firearm even though

3

he was prohibited from doing so given his prior commitment to Sharpe Hospital. (*Id.*). Movant was charged with one count of providing false information on the form and one count of illegally possessing a firearm. (*Id.*).

Prior to trial, Movant's counsel filed a Motion to Dismiss the indictment, arguing that Movant was denied procedural due process during the underlying state court proceeding, which led to his commitment to Sharpe Hospital. (ECF No. 48). He also argued that the law prohibiting gun possession by mentally ill persons should be voided as a violation of the Second Amendment, because the correlation between mental illness and gun violence was insufficient to justify the prohibition. (ECF No. 48). Defense counsel also filed a separate motion, asking the Court to strike "surplusage" from the second count of the indictment, which stated that Movant had been adjudicated a "mental defective." (ECF No. 52). The Court denied the motion to dismiss, but granted the motion to strike surplusage. (ECF No. 88). The Court explained that federal court was not the proper venue to litigate the commitment order as Movant had not appealed the order in state court. (*Id.* at 7-8). The Court similarly rejected Movant's Second Amendment argument, pointing out that both the Supreme Court of the United States and the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") had recognized a valid limitation on the right to bear arms for those persons suffering from mental illness. (*Id.* at 8-10). However, the Court agreed to strike the language describing Movant as a mental defective, noting that 18 U.S.C. § 922(g)(4) placed the same prohibition on a citizen who was adjudicated as a mental defective as was placed on a citizen who had been committed to a mental institution. Because the parties did not dispute that Movant had been involuntarily committed to Sharpe Hospital, an adjudication of his mental status as "defective" was unnecessary to prove illegal possession of the firearm. (*Id.* at 10).

On March 3, 2019, Movant's counsel requested a continuance of the trial date to allow the Supreme Court time to consider and rule on *Rehaif v. United States*, 139 S. Ct. 2191 (2019). In *Rehaif*, a defendant convicted of illegally possessing a firearm argued that the conviction should be set aside, because the Government had not proven that the defendant knew he was a member of a category of persons prohibited from possessing a firearm. Movant argued that he should be permitted to offer evidence of his *mens rea*, as the United States had not pleaded that Movant knew of his prohibited status. (ECF No. 116). The Court denied the motion, explaining that the decision in *Rehaif* would not impact the scope of the evidence permitted at trial. (ECF No. 120). The Court explained that the United States was already required to prove that Movant knew he had been committed to a mental institution in order to prove the charge that he had lied on the ATF form. (*Id.*). The Court added that, to the extent Movant wanted to challenge the validity of the commitment order, *Rehaif* had no bearing on the Court's prior ruling that this issue was not relevant to the federal charges.

Trial began on May 11, 2019 and concluded the following day with a jury verdict of guilty on both counts. (ECF Nos. 123, 124, 128). Movant filed a motion for judgment of acquittal and a motion for a new trial, which were both denied. (ECF Nos. 141, 142, 145). Movant was sentenced on August 14, 2019 to a total of sixty months' imprisonment followed by three years of supervised release. (ECF No. 159).

Movant filed a timely appeal with the Fourth Circuit in which he challenged his conviction on the charge of illegal possession of a firearm. *United States v. Collins,* No. 19-4596 (4th Cir. Aug. 15, 2019); (ECF No. 167). On appeal, Movant contended that the conviction should be reversed because (1) the indictment failed to allege a crime as it did not assert that Movant knew of his prohibited status as required by *Rehaif*; (2) that the

5

district court erred when it rejected Movant's Second Amendment argument; and (3) that the commitment order entered by the Circuit Court of Raleigh County was invalid and could not support a § 922(g)(4) conviction. As to the latter contention, Movant argued that the commitment order was temporary, not final; that he had attained competency prior to possessing the firearm; and that the State of West Virginia did not report Movant to the National Instant Criminal Background Check System ("NICS") or force him to immediately surrender his firearms as required by West Virginia law. Movant further asserted as grounds for reversal that the District Court improperly prevented Movant from testifying about his status and *mens rea* and erred by instructing the jury concerning Movant's status and *mens rea* in a manner contrary to *Rehaif*. Finally, Movant claimed that the sentence imposed on him, which was greater than the range recommended by the United States Sentencing Guidelines, was unreasonable. *Collins,* No. 19-4596, at Doc. 45.

On December 3, 2020, the Fourth Circuit affirmed the District Court's judgment. (ECF No. 191). The Fourth Circuit held that ample evidence supported the verdict and any error in the indictment or instructions was not prejudicial to Movant. (*Id.*). Moreover, the Fourth Circuit noted that Movant admitted that he was the subject of an order involuntarily committing him to a mental institution, and although he repeatedly claimed that he did not make a false representation on the ATF form, the jury rejected his contentions. (*Id.*). The Fourth Circuit was not persuaded by Movant's Second Amendment argument and specifically found that Movant's temporary commitment fell squarely within any reasonable definition of § 922(g)(4); accordingly, Movant was properly charged and fairly convicted. The Fourth Circuit additionally determined that the sentence imposed was reasonable. (*Id.*). Movant did not appeal the Fourth Circuit's judgment to the Supreme Court; therefore, his judgment became final on March 3, 2021.

II.  **Standard of Review**

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence that was entered in a separate proceeding. To succeed on such a motion, Movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; the court imposing the sentence lacked jurisdiction; the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a prisoner's conviction or sentence brought pursuant to § 2255 requires Movant to establish his or her grounds by a preponderance of the evidence. *Sutton v. United States of America,* No. 2:02-cr-00065, 2006 WL 36859, at *2 (E.D. Va. Jan. 4, 2006).

III.  **Motion, Response, and Reply**

In his § 2255 motion, Movant asserts the following grounds:

1.  The United States lacked jurisdiction to charge him under 18 U.S.C. § 927, because his temporary commitment to Sharpe Hospital was not a "final" commitment under West Virginia law that would deprive him of the right to bear arms. (ECF No. 196 at 5)

2.  The Court told defense counsel to conceal exculpatory evidence. (*Id.* at 6).

3.  The state court overturned his commitment; therefore, the United States had no jurisdiction to charge him. Defense counsel lied about the status of the commitment. (*Id.* at 8).

4.  Movant was denied the ability to testify or address material facts by a biased Court. (*Id.* at 9).

5.  The Court and counsel made various errors during the trial. (ECF No. 197 at 3-6).

7

The United States asserts three arguments in opposition to Movant's § 2255 motion. (ECF No. 204). First, the United States contends that the motion is time-barred under 28 U.S.C. § 2255(f). According to the United States, Movant had one year from the date that the judgment became final in which to file his motion, yet he failed to do so within the allotted time frame. The United States emphasizes that while Movant claims actual innocence as a gateway to a merits review, he does not introduce any new information that was not offered to the district and appellate courts. Second, the United States refutes Movant's claim that his commitment to Sharpe Hospital was not a commitment that resulted in a firearms prohibition. (*Id.* at 4-5). The United States cites to the Fourth Circuit's opinion, which unequivocally found that Movant's commitment to Sharpe Hospital fell squarely within the definition found in § 922(g)(4). Lastly, the United States argues that Movant has failed to demonstrate any errors by counsel that prejudiced him; consequently, Movant cannot show ineffective assistance of counsel. (ECF No. 204 at 6-8).

Movant filed a reply memorandum on June 27, 2022. (ECF No. 206). Movant claims that his motion is timely, because he attempted to file the motion prior to the deadline. (*Id.* at 4). He admits that the Clerk of Court did not receive the motion and no motion was docketed, but he asserts that his claims should still be heard. In addition, Movant argues that while his innocence is clear from the record, he did not have access to relevant West Virginia statutes until February 28, 2022; therefore, the statutes should be considered as "new evidence," which extends the limitations period. (*Id.* at 4-6). Movant claims, in any event, that his actual innocence serves as a gateway to a merits review notwithstanding the existence of a procedural bar or expiration of the statute of limitations. (*Id.* at 6). After discussing federal law and its compatibility to West Virginia

8

law, Movant argues that he is actually innocent of the crimes of conviction because his commitment was set aside by his state habeas action and he was restored to competency and, as all of this occurred prior to the federal charges, the United States lacked jurisdiction to indict him. He points out that he was never charged for being a prohibited person under state law and the circuit clerk never reported his commitment to the West Virginia mental health registry, as required by West Virginia Code § 61-7A-3. Movant contends that these facts, combined with the compatibility of West Virginia and federal law, negate the United States' position that Movant was prohibited from possessing a firearm. (*Id.* at 7-16). Movant provides additional argument in support of his other grounds for relief, pointing to portions of the record that he believes document fraud and conspiracy on the part of the Court and counsel. (*Id.* at 20-44).

## IV. Discussion

### A. Timeliness

The United States argues that the motion was not filed within the requisite one-year limitations period. Pursuant to the Anti–Terrorism and Effective Death Penalty Act of 1996 (hereinafter the "AEDPA"), a § 2255 motion must be filed within one year of the latest of the following dates:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented

9

could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f).

Movant does not allege that subsections (2) or (3) of § 2255(f) apply, but does posit that the onset of the limitations period should be determined using § 2255(f)(4), because he did not have access to relevant state statutes until February 2022. Subsection (4) requires the movant to demonstrate newly discovered facts that would merit restarting the one-year limitations period. Movant fails to meet this burden. Statutes are not "facts," and access to statutes is not necessary to assert newly discovered facts. *See, e. g, McCloud v. United States*, 987 F.3d 261, 264 (2d Cir. 2021) (holding that there is "a critical distinction between facts and law: A fact is an actual or alleged event or circumstance, *as distinguished from* its legal effect, consequence, or interpretation.")(citation and markings omitted). Movant has claimed innocence from the outset of the case, indicating that he did not knowingly possess a firearm when prohibited by law. Furthermore, he was aware that a background check by a West Virginia State Trooper did not reveal his commitment to Sharpe Hospital; that he was not charged with a state crime related to possessing a firearm or reported to NICS; that he attained competency during his state criminal case; and that his state habeas action was voluntarily dismissed when he was released from Sharpe Hospital. These are the primary facts he uses to support his claim of innocence. Accordingly, he offers no new "facts" to trigger application of § 2255(f)(4).

As an alternative argument for waiving the one-year limitations period, Movant claims actual innocence. In *McQuiggin v. Perkins,* the Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar … or … expiration of the statute of limitations." 569 U.S. 383, 386 (2013). However, the Supreme Court cautioned that viable actual-

10

innocence gateway claims are rare, stating "a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). Once again, Movant offers no new evidence to support his claim of innocence. *See Schlup*, 513 U.S. at 324 ("To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."). In the absence of new evidence, Movant cannot use actual innocence as a way to avoid the statute of limitations. Indeed, without new evidence, Movant is simply requesting a "re-do" of a trial that already took place, which would necessarily require the Court to ignore the Fourth Circuit's finding that ample evidence supported the jury's verdict.

As Movant does not assert any facts or argument to suggest that subsections (2), (3), or (4) of § 2255(f) apply to his claim, the applicable limitations period is determined under § 2255(f)(1), which provides that a motion must be filed within one year of the date that the judgment of conviction becomes final. Movant's judgment became final on March 3, 2021—which was ninety days after the Fourth Circuit affirmed the District Court's judgment—allowing Movant until March 2, 2022 in which to file a § 2255 motion. The declaration signed by Movant reflects that he placed his motion in the prison mailing system on March 30, 2022—twenty-eight days late. (ECF No. 196 at 13). Therefore, Movant's motion is very clearly untimely.

The Fourth Circuit has long recognized that the AEDPA's statute of limitations can be tolled in "rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitations period against the party

11

and gross injustice would result." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). The Supreme Court established in *Holland v. Florida* that equitable tolling should only be extended when a movant demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." 560 U.S. 631, 649 (2010). Movant claims that he tried to file his motion in January 2022, but concedes that the Clerk's office did not receive and docket a motion from him. This is not an extraordinary circumstance. *See, e.g., Harris v. Dye*, No. 5:16CV208-FDW, 2017 WL 1237976, at *2 (W.D.N.C. Mar. 31, 2017) ("Having a legal filing lost in the mail is not an 'extraordinary' circumstance as that term is understood in the context of equitable tolling."). Moreover, Movant fails to supply any evidence to support his allegation of mailing a motion in January or show that he was diligent in following-up on that motion. *See, e. g., Hale v. Burt,* No. 05–CV–71301–DT, 2006 WL 626056, at *3 (E.D. Mich. March 13, 2006) (finding the petitioner was entitled to equitable tolling because he submitted "persuasive documentary evidence" that he submitted his motion for relief from judgment to prison officials to mail to the court within the one year limitations period, but that motion was "either lost or misplaced," and because the petitioner "was reasonably diligent in attempting to inquire into the status of his post-conviction motion" with the court and to compel action on it).

Movant additionally argues that he was moved from one facility to another and did not have access to law and documents supporting his motion. Even if true, these circumstances do not meet the standard for equitable tolling. "Transfers between prison facilities, solitary confinement, lockdowns, restricted access to the law library and an inability to secure court documents do not qualify as extraordinary circumstances;" thus, they do not justify equitable tolling. *Allen v. Johnson*, 602 F. Supp. 2d 724, 727–28 (E.D.

Va. 2009). In summary, Movant does not provide factual support to demonstrate that he exercised reasonable diligence in the pursuit of his post-conviction remedies and was thwarted by extraordinary circumstances. To succeed on an assertion of equitable tolling, the movant "bears a strong burden to show specific facts" that demonstrate he fulfills both elements of the test. *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008). Because Movant filed his motion late and provides no basis for equitable tolling, the undersigned **FINDS** that Movant's motion is barred by the relevant statute of limitations.

### B. *Failure to State a Meritorious Claim*

Even if Movant had timely filed his motion, he still would not be entitled to relief because his claims have no merit.

#### 1. Jurisdiction

In Grounds One and Three of Movant's § 2255 motion, he claims that the United States lacked jurisdiction to indict him on the firearms charges for two reasons: first, his commitment was not a final commitment which deprived him of the right to bear arms; and second, his commitment order was overturned prior to the federal indictment. These two grounds fail, because Movant's commitment order was not overturned, and his commitment qualified as a triggering event under 18 U.S.C. § 922(g)(4). On appeal, the Fourth Circuit directly addressed Movant's claim that his temporary commitment did not constitute a commitment for purposes of criminal charges under § 922(g)(4). The Court explained that it had already rejected a similar argument, finding that a "commitment to restore a person to competency falls 'squarely within any reasonable definition of 'committed' as used in § 922(g)(4)." (ECF No. 191 at 9-10). Consequently, Movant's commitment fell squarely within the definition. (*Id.* at 10). Movant did not appeal the Fourth Circuit's judgment. As such, he cannot raise the same ground for relief in this

13

proceeding. *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976).

With respect to Ground Three, Movant's claim that his commitment order was overturned through the state habeas proceeding is simply incorrect. The Raleigh Circuit Court found Movant to be incompetent on April 10, 2014, and he was involuntarily committed to Sharpe Hospital for mental treatment designed to attain competency. (ECF No. 197 at 54-56). Movant did not appeal the commitment order, but did file a habeas action in the Raleigh County Circuit Court, challenging the legitimacy of the order and seeking release from the hospital. (ECF No. 197 at 27-36). On November 17, 2014, Movant dismissed the habeas proceeding, before any determination was made by the Court as to the accuracy of Movant's claims. By that time, Movant had attained competency and was released from Sharpe Hospital. (ECF No. 197 at 23-25). As the purpose of the proceeding—which was Movant's release from Sharpe Hospital's custody—was accomplished, the habeas petition became moot. However, the commitment order was not overturned or set aside by the November 17, 2014 order, and Movant provides no evidence that the commitment order was ever vacated or voided. To the contrary, evidence supplied by Movant corroborates the Government's position that the order was not invalidated. (ECF No. 197 at 38-39). The fact that Movant received treatment which resulted in him regaining competency does nullify the commitment order.

Additionally, the actions or failures to act on the part of West Virginia are not determinative of whether the United States properly indicted Movant under federal law. Movant asserts that the lack of a state charge for possession of a firearm by a prohibited person and the failure of the circuit clerk to notify NICS of Movant's commitment are proof that he was not a prohibited person under state law. Consequently, he was not a prohibited person under federal law, because the state and federal laws are compatible.

14

Movant's logic is specious. The State of West Virginia and the United States are separate sovereigns with their own set of criminal statutes. A crime under one sovereign's laws is not the same offense as a crime under the laws of another sovereign, even when the laws are the same or compatible. *Gamble v. United States,* 139 S. Ct. 1960, 1963 (2019). "Under this 'dual-sovereignty' doctrine, a State may prosecute a defendant under state law even if the Federal Government has prosecuted him for the same conduct under federal law." *Id.* By extension, the federal government may prosecute a defendant for a federal crime even when the State decides not to prosecute the defendant for the same violation of state law. There is no explanation in the record as to why the State of West Virginia did not charge Movant with a firearms charge, or why the circuit clerk failed to report Movant to NICS. However, an explanation is not required, because it is irrelevant to the jurisdiction of the United States to prosecute Movant for a federal crime. The Fourth Circuit examined the indictment returned by the federal grand jury, the evidence offered at trial, and the relevant federal criminal statute and concluded that Movant's guilty verdict was appropriate. Therefore, the undersigned **FINDS** no merit to Grounds One and Three of Movant's § 2255 motion.

### 2. Fraud and conspiracy

In Grounds Two, Four, and Five of the § 2255 motion, Movant alleges errors by the Court, the Assistant United States Attorney ("AUSA"), and defense counsel, which Movant argues are evidence of fraud and conspiracy to wrongfully convict him. For example, Movant claims that the Court urged defense counsel to conceal exculpatory evidence; the Court prohibited Movant from testifying; and the AUSA lied in his closing argument and subverted the purpose of various instructions. (ECF No. 196 at 6, 9; ECF No. 197 at 5-6). To the extent Movant could have raised these arguments on appeal and

15

failed to do so, they are procedurally defaulted. As a general rule, claims of error that could have been raised on direct appeal, but were not, may not be raised on collateral review unless the petitioner shows cause and prejudice or actual innocence of the offense. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States,* 523 U.S. 614, 622 (1998). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010) (quoting *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999)) (internal marks omitted). In addition, Movant must show more than simply a possibility of prejudice; instead, he must show that an error occurred which caused an "actual and substantial disadvantage" tainting the entire proceeding with an "error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 170 (1982). "The procedural-default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro*, 538 U.S. at 504. The burden to overcome procedural default rests with Movant as he is the person attacking his sentence. *United States v. Fugit,* 703 F.3d 248, 253 (4th Cir. 2012).

    Movant cannot overcome the procedural bar to his claims. As explained in detail above, he has not supplied any new evidence to demonstrate actual innocence, nor has he shown prejudice. Even if Movant contends that his lawyer was ineffective for failing to raise these arguments on appeal, Movant cannot show "an actual and substantial disadvantage" tainting the entire proceeding with "an error of constitutional dimensions."

    Ground Two of the § 2255 motion apparently stems from defense counsel's representation to the Court that Movant did not appeal his commitment order. (ECF Nos.

186 at 9-12; 188 at 7-10). As explained above, the November 17, 2014 order of the Raleigh County Circuit Court did not constitute "exculpatory evidence" as that order did not void the commitment order in any way, shape, or form. Defense counsel was absolutely correct when he advised the Court that the order had never been ***appealed***. A petition for a writ of habeas corpus is not an appeal; rather, it is a collateral challenge to a court order in which the petitioner seeks to shorten his time in custody. *Preiser v. Rodriguez,* 411 U.S. 475, 484 (1973). No ruling was ever made invalidating the commitment order; rather, the relief sought by the habeas petition—that being release from hospitalization—was achieved, rendering the petition moot. *See In Re: Involuntary Hospitalization of T.O.,* 796 S.E.2d 564, 565, syl. pt. 3 (W. Va. 2017).

As to Ground Four, Movant's claim is factually incorrect as he was permitted to testify at trial. (ECF No. 153 at 75-93). While it is true that the Court placed limitations on Movant's testimony, the Court was authorized to do so. *United States v. Gaither*, 83 F.3d 416 (4th Cir. 1996) ("A trial court's evidentiary rulings are entitled to substantial deference, and a court has great discretion on limiting testimony that leads away from the main controversy.") (citations omitted). Movant indicates that the Court prevented him from offering exculpatory evidence, although he does not specify the nature of that evidence. (ECF No. 197 at 5-6). Assuming the exculpatory evidence is the habeas petition Movant filed in Raleigh Circuit Court and the Circuit Court's November 2014 order, that evidence is not exculpatory as previously explained.

Movant also claims that the Court would not allow him to offer testimony on the validity of the commitment order or his *mens rea*. During trial, Movant decided to testify on his own behalf, which prompted the Court to explain to Movant his right to remain silent and ask him if he had any questions. (ECF No. 153 at 68-69). Movant indicated that

17

he had questions and began discussing the habeas corpus proceeding he filed in state court concerning the commitment order. Movant advised the Court that he wanted to testify about that proceeding. (*Id.* at 69-70.) The Court explained that evidence regarding the underlying issues related to his involuntary commitment were not relevant, because the only issue of relevance was whether or not he had been committed; not whether he disagreed with the commitment order. (*Id.* at 70-73). The record very plainly establishes that Movant was committed to Sharpe Hospital against his will and that the commitment order, although challenged by Movant, was never vacated or nullified. Consequently, the issue in the federal case was not the validity of the order, or Movant's knowledge that the commitment order placed him in a category of persons prohibited to possess a firearm; instead, the issue was whether Movant knew he had been committed. As such, the Court's limitation on Movant's testimony was a proper exercise of its authority to exclude irrelevant and confusing testimony. *United States v. Udeozor,* 515 F.3d 260, 265 (4th Cir. 2008) ("District judges enjoy wide discretion to determine what evidence is admissible under [Rule 403]."). Despite the Court's admonishments, and over the Government's objections, Movant nevertheless testified that he did not know he was prohibited from possessing a firearm, that he was not prohibited under West Virginia law, and that the Sharpe Hospital commitment was "overturned." (ECF No. 153 at 78-79, 86-87, 91). Therefore, Movant managed to tell the jury all of the information he claims was prohibited by the Court. As such, even if the Movant could show that the Court abused its discretion in limiting his testimony, the undersigned **FINDS** that Movant has not demonstrated any prejudicial errors by the Court.

Finally, as to Movant's claim of various frauds and misdeeds perpetrated by the AUSA and defense counsel, Movant makes no coherent arguments and, more

importantly, presents no evidence to buttress his claims. His supporting memorandum and reply brief are replete with factually uncorroborated assertions, recitations of irrelevant law, and conclusory accusations of conspiracy and fraud. Movant's entire motion appears to rest on his erroneous assumption that his involuntary commitment to Sharpe Hospital did not qualify as a commitment for the purpose of prohibiting the possession of firearms. He contends that his counsel hid exculpatory evidence related to his commitment, including that the commitment order was entered improperly and was later set aside in the habeas proceeding. However, Movant ignores that many of these arguments were made to the Fourth Circuit on appeal and were explicitly rejected. Furthermore, the Fourth Circuit confirmed that there was ample evidence upon which to find Movant guilty of the crimes charged against him. As Movant offers nothing new in his § 2255 motion, the undersigned **FINDS** no merit in Movant's claims.

### V.  Proposal and Recommendations

The undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255, (ECF No. 196), be **DENIED**; the request for dismissal by Respondent, (ECF No. 204), be **GRANTED**; and that this action be **DISMISSED,** with prejudice, and removed from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date

of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Berger, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Movant and counsel of record.

**FILED:** September 7, 2022

_____
Cheryl A. Eifert
United States Magistrate Judge